IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLOPLAST A/S, <br>         Plaintiff, <br><br> v. <br><br> OAKWELL DISTRIBUTION INC., doing business as "DEVON MEDICAL PRODUCTS," <br>         Defendant. | CIVIL ACTION <br><br><br><br> NO. 15-1592 |

DuBois, J.                                                                                                 June 22, 2015

## **M E M O R A N D U M**

### I. INTRODUCTION

Plaintiff Coloplast A/S ("Coloplast") filed suit against defendant Oakwell Distribution Inc., doing business as "Devon Medical Products" ("Devon")[1] in connection with a global distribution agreement of negative wound therapy products ("NWTP")[2]. Presently before the Court is defendant's Motion to Dismiss. For the reasons set forth below, the Court denies defendant's Motion.

### II. BACKGROUND[3]

Plaintiff alleges the following facts: On October 11, 2013, plaintiff and defendant entered into a Partnership Agreement ("Agreement"), which was amended on July 9, 2014, and September 12, 2014. (Compl. ¶ 5.) The July 9, 2014 Amendment ("First Amendment") purports

---

[1]     The parties also refer to Devon as "DMP."

[2]     NWTP "is a wound treatment system intended to accelerate the healing of acute and chronic wounds. The system consists of a vacuum pump, drainage tune, and wound dressings. . . [which] create negative pressure in a patient's wound bed . . . [that] allows for infectious material to be removed and accelerates wound healing." (Compl. ¶ 8.)

[3]     As required on a motion to dismiss, the facts are presented in the light most favorable to plaintiff.

to effect a transfer of "all of Devon's rights and obligations."[4] (Def.'s Mot. to Dismiss, Ex. B.) The September 12, 2014 Amendment ("Second Amendment") states that the First Amendment was executed, inter alia, "to evidence certain assignments from DMP to DMD Cayman." (Def.'s Mot. to Dismiss, Ex. C.)

Under the Agreement,[5] plaintiff received the right to market, import into the European Union and other foreign countries, and sell NWTP within a specified geographic territory. (Id. at 5.) Devon, in exchange, received a one-time payment of $500,000, an annual fee, "and other valuable consideration." (Id.) Pursuant to the Agreement, Devon was required to "maintain certain quality and performance standards, assess and respond to product issues, undertake all appropriate corrective actions, and if necessary conduct product recalls." (Id. ¶ 6.)

Since the execution of the Agreement, quality and safety issues with the NWTP have impaired plaintiff's ability to market and sell the product. (Id. ¶ 9.) As of the time of filing the Complaint, plaintiff had received and submitted to Devon in writing 47 complaints from customers with respect to the NWTP. (Id. ¶ 10.) As a result of the complaints, plaintiff undertook an independent risk assessment of the NWTP, which it completed on March 24, 2015. (Id. ¶ 11.) Plaintiff's risk assessment "uncovered significant quality and safety issues and

---

[4] Although the Partnership Agreement ("Agreement") and the amendments are not attached to plaintiff's Complaint, plaintiff's claims are based in part on those documents, and both parties have attached the documents to their briefing on defendant's Motion to Dismiss. Thus, the Agreement and amendments are properly considered by the Court in deciding defendant's Motion. See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . .").

[5] The laws of Pennsylvania govern pursuant to the terms of the Agreement. (Compl. ¶ 7.)

concluded that the NWTP poses safety hazards to patients, including the potential for localized infections, systemic infections, and delayed wound healing." (Id. ¶ 12.)

A panel of three medical experts verified the results of the risk assessment on March 19, 2015 in a presentation at Herlev University Hospital in Copenhagen, Denmark. (Id.) The medical experts opined that the NWTP's quality and safety issues may warrant a product recall. (Id. ¶ 13.) Under Article 8 of the Agreement, Devon is responsible for conducting and paying the costs of the product recall. (Id.)

Plaintiff notified Devon of its concerns with respect to the quality and safety of the NWTP in December 2014. (Id. ¶ 14.) Specifically, Plaintiff's Senior Vice President of Global Wound Care, Nicolai Buhl Andersen, had a telephone conversation with President and CEO of Devon, Dr. John Benett, in which he detailed those concerns, and on December 15, 2014, Andersen followed up with a letter summarizing the issues discussed. (Id.) The parties were subsequently unable to agree on a resolution of the quality and safety issues discussed. (Id. ¶15) Consequently, on February 12, 2015, plaintiff notified Devon that it was in breach of the Agreement. (Id. ¶¶ 15, 25, 26.) Devon failed to cure the breach, and has "remained unwilling to enter into a constructive dialogue" with plaintiff with respect to the alleged safety issues. (Id. ¶ 16.) Instead, defendant has accused plaintiff of "raising safety concerns as a guise to detract from plaintiff's allegedly poor sales performance under the Agreement." (Id. ¶ 16.)

Article 9(c) of the Agreement permits the non-breaching party to terminate the Agreement if the breaching party fails to cure within thirty days of receiving written notice of the breach. (Id. ¶ 15.) Thus, plaintiff asserts that it is entitled to immediate termination of the Agreement. (Id. ¶ 17.)

3

The Complaint contains four counts: 1) Breach of Contract; 2) Breach of Warranty; 3) Indemnity, Negligence, and Willful Misconduct; and 4) Declaratory Judgment. Defendant filed a Motion to Dismiss on May 8, 2015.

### III. DISCUSSION

In its Motion to Dismiss, defendant argues that: 1) plaintiff has sued the wrong party because defendant assigned all of its rights and obligations under the Agreement to its foreign affiliate, DMD-Cayman Company Limited; 2) Count III should be dismissed because plaintiff's tort claims are barred by the Gist of the Action doctrine; 3) a declaratory judgment is inappropriate because there is no real legal controversy between plaintiff and defendant; 4) plaintiff's demand for attorneys' fees should be stricken; 5) plaintiff's demand for punitive damages should be stricken; and 6) plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join a necessary and indispensable party because DMD-Cayman Company Limited is a necessary and indispensable party that was not joined. The Court addresses defendant's arguments in turn.

#### a. Argument #1: Plaintiff Has Sued the Wrong Party

Defendant first argues that plaintiff's Complaint should be dismissed because plaintiff has improperly identified Devon as the defendant in this case. Devon contends that it is not party to the Agreement that is the underlying basis of plaintiff's claims because it assigned all of its rights and obligations under the Agreement to its foreign affiliate, DMD-Cayman Company Limited, organized in Grand Cayman. Plaintiff, in response, disputes the meaning and effect of the amendments to the Agreement which purport to effect a transfer of Devon's rights to DMD-Cayman. Specifically, plaintiff points to what it contends is inconsistent and ambiguous language with respect to the assignment of rights in the two separate amendments to the

4

Agreement, and further argues that the parties' conduct after the purported assignment only created further ambiguity about which, if any, rights and obligations Devon meant to assign. Plaintiff also asserts that notwithstanding any assignment, Devon and plaintiff continued to have a commercial relationship outside of the Partnership Agreement from which its claims arise.

Defendant's argument raises questions of contract interpretation,[6] specifically, whether the Amendments at issue effected an assignment, and whether any such assignment releases Devon from liability.[7] Such questions are more appropriately decided at the summary judgment stage or at trial, "with the benefits of discovery and a full evidentiary record." See Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan Bd. of Trustees v. S. Gate Ambulatory Surgery Ctr., LLC, No. 11-01215, 2011 WL 4080054, at *3 (N.D. Cal. Sept. 12, 2011) (denying motion to dismiss where defendant's argument with respect to the scope of assignment provision in contract presented "questions of contract interpretation to be decided on summary judgment or at trial, with the benefits of discovery and a full evidentiary record"); Wheaton v. Diversified Energy, LLC, No. 03-105, 2003 WL 23162404, at *2 (E.D. Pa. Dec. 16, 2003) (denying motion to dismiss in which defendant asserted that it was the wrong defendant to allow for discovery on whether employment contract had been assigned to defendant). Thus, the Court will permit discovery on these issues, and defendant may reassert its argument after

---

[6] Neither defendant nor plaintiff has thoroughly briefed these issues.

[7] The Court notes that under Pennsylvania law, liability may only be "transferred from one contracting party to another . . . [if] the assumption language is clear and specific." AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, No. 10-6087, 2011 WL 3241356, at *2 (E.D. Pa. July 29, 2011) (citation and internal quotation marks omitted). Moreover, a contracting party cannot transfer liability without the consent of the party to which it is liable. New Jersey Dep't of Treasury v. Visara Int'l, Inc., 166 F. App'x 639, 641 (3d Cir. 2006) (citing 29 Williston on Contracts § 74:27 at 412 (4th ed. 2003, Supp. 2004)).

5

completion of discovery by motion for summary judgment or at trial if warranted by the facts and the applicable law.

> **b. Argument #2: Count III Should Be Dismissed Based on the "Gist of the Action" Doctrine**

Defendant next contends that Count III of plaintiff's Complaint, alleging negligence, indemnity, and willful misconduct, should be barred based on the gist of the action doctrine. In response, plaintiff concedes that it may eventually be required to choose between a tort and contract theory of recovery, but because Devon may later prevail on its theory that it was not a party to the Agreement at issue, it would be premature to foreclose plaintiff's tort claim at this stage. The Court agrees.

Under Pennsylvania law, the gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010) (quoting Erie Ins. Exch. v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). "When the validity and if valid, the effect, of a contract is uncertain, courts have found application of the gist of the action doctrine on a motion to dismiss to be inappropriate." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012); see also My Space Preschool & Nursery, Inc. v. Capitol Indent. Corp., No. 14–2826, 2015 WL 1185959, at *8 (E.D. Pa. Mar. 13, 2015) ("Courts are reluctant to dismiss tort claims at the early stages of proceedings under the gist of the action doctrine."). As the existence of a contract between plaintiff and defendant is disputed, it would be premature to dismiss the tort claim "for being too enmeshed with a contract." Sizemore v. Hotwire Commc'ns, LLC, No. 14-5543, 2015 WL 2381059, at *9 (E.D. Pa. May 18, 2015). However, the Court does not foreclose defendant from reasserting its challenge to Count III

based on the gist of the action doctrine at a later stage of the proceedings if warranted by the facts and the applicable law.

### c. Argument #3: A Declaratory Judgment is Inappropriate

Defendant argues that the Court should dismiss Count IV, which seeks a declaratory judgment that plaintiff may terminate the Agreement with defendant. Defendant contends that there is no real controversy between Devon and plaintiff because 1) Devon assigned its rights under the Agreement which serves as the basis for plaintiff's claims; and 2) plaintiff has not alleged a threat of imminent harm, but rather has alleged acts and omissions that have already occurred.

As the Court has declined to rule at this early stage on whether Devon assigned its rights and obligations under the Agreement to DMD-Cayman, and whether any such assignment releases Devon from liability, see supra Section III(a), the Court also declines to dismiss Count IV on this ground. Defendant may reassert this argument at a later stage of the proceedings if warranted by the facts and the applicable law.

To the extent that defendant argues that the Court should dismiss plaintiff's request for a declaratory judgment because plaintiff has not sufficiently alleged a threat of imminent harm in the Complaint, the argument is rejected. At the outset, the Court notes that it construes defendant's argument as a challenge to the Court's subject matter jurisdiction over plaintiff's request for a declaratory judgment pursuant to Rule 12(b)(1).[8] In evaluating a motion to dismiss under Rule 12(b)(1), the Court must first determine whether it is confronted with a facial or factual challenge to its jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d

---

[8] Under the Declaratory Judgment Act, a court does not have jurisdiction to review a declaratory judgment action if there is not "a case of actual controversy." 28 U.S.C. § 2201(a).

Cir. 2000). A motion that "attack[s] the complaint on its face" is known as a facial challenge, while a motion that "attack[s] the existence of subject matter jurisdiction in fact ... apart from any pleadings" is a factual challenge. See Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977). Although defendant failed to properly label its Motion,[9] it is clear that its argument against plaintiff's request for declaratory judgment raises a facial challenge, as it concentrates on the sufficiency of the allegations in the Complaint. See Barrister v. Wendy's Intern., Inc., 1993 WL 293896, at *5 (E.D. Pa. July 30, 1993). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs., 220 F.3d at 176.

In the context of declaratory judgments, the U.S. Court of Appeals for the Third Circuit employs a three-part test to determine whether a case involves an actual controversy. Cnty. Council of Northampton Cnty. v. SHL Systemhouse Corp., 55 F. Supp. 2d 334, 336 (E.D. Pa. 1999). Plaintiff must show that "(1) the interests of the parties are adverse, (2) the judgment is sufficiently conclusive to define and clarify the legal rights of the parties and (3) the judgment is useful or of practical help." Id. With respect to the first element, plaintiff must allege facts that, taken to be true, demonstrate that there is a "substantial threat of real harm that remains 'real and immediate' throughout the course of the litigation." Id. (quoting Salvation Army v. Department of Community Affairs, 919 F.2d 183, 192 (3d Cir. 1990)). The second element requires that plaintiff plead a concrete set of facts such that the relief would be of a conclusive character, rather than an advisory opinion based upon a hypothetical set of facts. Id. (citations omitted).

The Court concludes that plaintiff has sufficiently plead facts to demonstrate that the case involves an "actual controversy." Plaintiff's declaratory judgment action seeks to terminate an

---

[9] Defendant's Motion was brought pursuant to Rule 12(b)(6) and Rule 12(b)(7).

Agreement which it asserts defendant breached by manufacturing and selling to plaintiff the NWTP with quality and safety issues, (id. ¶¶ 25, 26, 45). Plaintiff alleges that the parties were unable to agree on a resolution to the quality and safety issues, (id. ¶ 15); plaintiff notified defendant that it was in breach and had 30 days to cure per the terms of the Agreement, (id.); defendant did not cure the breach and "was unwilling to enter into a constructive dialogue with Coloplast regarding NWTP's quality and safety shortcomings . . . [and] [i]nstead accused Coloplast of raising safety concerns as a guise to detract from Coloplast's allegedly poor sales performance under the Agreement," (id. ¶ 16). The Court concludes that these allegations satisfy both the first and second prongs of the Third Circuit's test as they are sufficiently concrete to establish that the dispute is not "purely hypothetical," see Recovercare, LLC v. Fairweather, No. 09-2911, 2009 WL 2837665, at *5 (E.D. Pa. Sept. 1, 2009), but rather involves a "live dispute" between adverse parties. Powell v. McCormack, 395 U.S. 486, 517–18 (1969). Moreover, the usefulness of resolving this "highly contentious and undoubtedly expensive dispute is self-evident," and thus the third prong is met. Cnty. Council of Northampton Cnty., 55 F. Supp. 2d at 336.

Contrary to defendant's argument, the fact that plaintiff alleges misconduct that has already occurred supports, rather than undermines, plaintiff's request for a declaratory judgment. Although plaintiff need not have suffered a "completed harm" to bring a declaratory judgment action, courts are more likely to determine that the parties' interests are sufficiently adverse, where such harm has been completed. Id. (citations omitted); see also 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2757, at 475 (3d ed. 1998) ("There is little difficulty in finding an actual controversy if all of the acts that are alleged to

9

create liability already have occurred."). Therefore, the Court denies that part of defendant's Motion to Dismiss which seeks dismissal of plaintiff's request for declaratory judgment.

### d. Argument #4: Plaintiff's Demand for Attorney's Fees Should Be Stricken

Defendant seeks to strike those paragraphs in plaintiff's Complaint which seek attorney fees on the ground that plaintiff has failed to identify any applicable contractual or statutory provision that permits plaintiff to recover attorney fees. In response, plaintiff contends that discovery may reveal facts that would support an award of attorney fees.

"Under Pennsylvania law, attorneys' fees are generally recoverable only when they are (1) authorized by statute, (2) authorized by contract or agreement between the parties, or (3) authorized by some other recognized exception." Thompson v. Med-Mizer, Inc., No. 10-2058, 2011 WL 1085621, at *8 (E.D. Pa. Mar. 21, 2011) (citing Chatham Communications, Inc. v. General Press Corporation, 344 A.2d 837, 842 (Pa.1975)). Courts routinely deny as premature motions to strike demands for attorney fees for failure to plead a particular statutory or contractual basis prior to discovery. See, e.g., Thompson v. Med-Mizer, Inc., 2011 WL 1085621, at *8 ("[A]lthough plaintiff has identified no applicable recognized exception to the general rule under Chatham, he contends that discovery may reveal facts which would support an award of fees under some recognized exception."); Fiorentino v. Cabot Oil & Gas Corp., 750 F. Supp. 2d 506, 515 (M.D. Pa. 2010) (declining to strike allegations with respect to attorney fees because "at such an early stage in the proceedings is impossible to determine that there are no circumstances where an award of fees or litigation costs would be appropriate").

The exact contours of the contractual relationship between the parties remains unclear, discovery may reveal that plaintiff is entitled to attorney fees, and defendant has not argued that there is no exception under which such fees could be awarded. Thus, the Court declines to strike

plaintiff's demand for attorney fees from the Complaint at this stage of the proceedings. Defendant may reassert this argument at a later stage of the proceedings if warranted by the facts and the applicable law.

### e. Argument #5: Plaintiff's Demand for Punitive Damages Should Be Stricken

Defendant asserts that plaintiff's demand for punitive damages should be stricken because plaintiff has not averred facts demonstrating evil motive or reckless indifference on the part of defendant. The Court concludes that it is premature for the Court to strike plaintiff's demand for punitive damages.

"[I]n Pennsylvania, '[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Fiorentino, 750 F. Supp. 2d at 515 (citing Restatement (Second) of Torts § 908(2)). At this early stage, there remains the possibility that the Court could find defendant's alleged "willful misconduct" (Compl. ¶ 40), to be sufficiently reckless or outrageous to permit punitive damages. See Papacoda v. A.I. Dupont Hosp. for Children of the Nemours Found, No. 05-3003, 2006 WL 1789077, at *5 (E.D. Pa. June 26, 2006); (denying motion to strike punitive damages prior to discovery as premature); Rock v. Voshell, No. 05-1468, 2006 WL 1409734, at *10 (E.D. Pa. May 18, 2006) (denying motion to strike punitive damages where "there remain[ed] the possibility that the Court could find Defendant's actions to be sufficiently outrageous to permit punitive damages," and in light of "the importance of allowing Plaintiffs' discovery to develop their case"). Thus, the Court will not strike plaintiff's demand for punitive damages in the Complaint at this stage. Defendant may reassert this argument at a later stage of the proceedings if warranted by the facts and the applicable law.

### f. Argument #6: Plaintiff's Complaint Should Be Dismissed Pursuant to F.R.C.P 12(b)(7)

Finally, defendant argues that the Complaint should be dismissed pursuant to Rule 12(b)(7) for plaintiff's failure to join DMD-Cayman, a party which defendant contends is necessary and indispensable. Defendant asserts that any judgment rendered in the absence of DMD-Cayman would prevent complete relief from being obtained, and thus DMD-Cayman is a necessary party. Devon further argues that, in the event that the Court determines that joinder of DMD-Cayman is necessary, but infeasible, then the Court should dismiss the Complaint because proceeding in the absence of DMD-Cayman would result in significant prejudice to DMD-Cayman's interests and "prevent a defense against Plaintiff's claims and jeopardize the opportunity to protect its rights wholly divesting the company of its due process rights." (Def.'s Mot. to Dismiss 14.) In response, plaintiff argues that DMD-Cayman is not indispensable because plaintiff seeks to recover from only Devon's failure to provide plaintiff with a product that met agreed-upon quality and safety standards, and does not seek relief from, nor make any allegations of misconduct with respect to, DMD-Cayman.

Rule 19 details the circumstances in which the joinder of particular party is mandatory. General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). Under Rule 19(a), the Court must first determine whether the absent party should be joined as a necessary party. Id.[10] If it is determined that an absent party is necessary, but that joinder is not feasible, a court must then determine whether "in equity and good conscience" it should proceed without

---

[10] Rule 19(a) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

that party, or whether that party is indispensable. Sugartown Worldwide LLC v. Shanks, No. 14-5063, 2015 WL 1312572, at *13 (E.D. Pa. Mar. 24, 2015).

In Wheaton v. Diversified Energy, LLC, Judge R. Barclay Surrick was confronted with a question similar to the one presently before this Court. 2013 WL 23162404, at *3. In Wheaton, defendant argued, inter alia, that plaintiff had sued the wrong defendant because it was not party to the employment contract from which plaintiff's breach of contract claim arose. Id. Plaintiff responded by pointing to evidence that defendant had in fact been assigned the contract at issue by a non-defendant party. Id. The Court denied the motion to dismiss without prejudice to the parties' right to file whichever motions they deemed appropriate after discovery. Id. The Court concluded that it would be premature for the Court to decide, on the limited record, which party employed plaintiff, subject to the terms of the contract, and therefore permitted discovery on the issue. Id.

Similarly, in this case, there remain open questions as to whether defendant assigned its rights and obligations under the Agreement to DMD-Cayman, whether any such assignment released Devon from liability, and the relationship between Devon and DMD-Cayman. Because the resolution of these questions is vital to the Court's analysis of whether DMD-Cayman, Devon's foreign affiliate, is a necessary and indispensable party to this action, it would be premature for the Court to dismiss plaintiff's Complaint pursuant to Rule 12(b)(7) for its failure to name DMD-Cayman as a defendant. Defendant may reassert this challenge after discovery if warranted by the facts and the applicable law. See Limited, Inc. v. El Al Isreal Airlines, No. 98–5651, 1999 WL 588290, at *3 (S.D.N.Y. Aug. 4, 1999) ("A motion to dismiss for failure to join a necessary party under Rule 19(a) and (b) should not be granted where there are issues of fact regarding the indispensability of the alleged necessary party.") (citations omitted).

13

**IV.     CONCLUSION**

For the forgoing reasons, defendant's Motion to Dismiss is denied.  An appropriate order follows.